GARCIA RAINEY BLANK & BOWERBANK LLP
Jeffrey M. Blank, SBN: 217522
jblank@garciarainey.com
Norma V. Garcia, SBN: 223512
ngarciaguillen@garciarainey.com
4 Park Plaza, Suite 520
Irvine, CA 92614
Telephone: (714) 382 – 7003
Facsimile: (714) 784 – 0031

Attorneys for Plaintiffs,
JORDAN TRIPP and 1840 FAIRFAX, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| JORDAN TRIPP, an individual; and 1840 FAIRFAX, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>JUSTIN ROBERTS, an individual; PROSPER FONTANAROSA HOMES LLC, a Florida Limited Liability Company; BAYSHORE BLVD 3801 LLC, a Florida Limited Liability Company; DAVIS ISLAND 577 RIVIERA LLC, a Florida Limited Liability Company; SUNSET PARK 3006 S BEACH LLC, a Florida Limited Liability Company; DAVIS ISLAND 501 E DAVIS BLVD LLC, a Florida Limited Liability Company; DAVIS ISLAND 232 CHANNEL DRIVE LLC, a Florida Limited Liability Company; and DOES 1–10, inclusive,<br><br>Defendants. | **Case No.:**<br><br>**Judge:**<br><br>**COMPLAINT FOR:**<br>**1. BREACH OF CONTRACT - JUNE 27, 2023 PROMISSORY NOTE;**<br>**2. FRAUD - INTENTIONAL MISREPRESENTATION;**<br>**3. FRAUD - NEGLIGENT MISREPRESENTATION**<br>**4. FRAUD - FALSE PROMISE**<br>**5. CIVIL RICO (18 U.S.C. § 1962(c))**<br>**6. CIVIL RICO CONSPIRACY (18 U.S.C. § 1962(d)); AND**<br>**7. UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED**<br><br>**Date Action Filed:** |

- 1 -

COMPLAINT

## INTRODUCTION

1.     This is an action arising from a calculated scheme perpetrated by Defendant Justin Roberts ("Roberts"), acting individually and as the controlling managing member of six Florida limited liability companies, to defraud California residents Jordan Tripp ("Tripp") and 1840 Fairfax, LLC ("1840 Fairfax") (collectively, "Plaintiffs") out of $200,000.00 in bridge financing, and to thereafter escape contractual liability through manufactured legal pretexts  -  specifically, by claiming that the very interest rate Roberts himself proposed and negotiated was "usurious" and unenforceable.

2.     Roberts' scheme is textbook fraud: induce a lender to part with money by making promises Roberts never intended to keep, pocket the loan proceeds, allow the loan to go into default, and then hide behind the defense that the interest rate he proposed renders the contract void. As a result of Roberts' fraudulent conduct, Plaintiffs have been damaged in an amount no less than $680,000.00 as of April 13, 2026  -  and the damages continue to accrue at $500.00 per day thereafter.

3.     Defendants' conduct further constitutes a pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), through repeated acts of wire fraud perpetrated across state lines using a network of Roberts-controlled LLCs as an enterprise.

## PARTIES

4.     Plaintiff Jordan Tripp is an individual residing in the County of Orange, State of California. At all times relevant herein, Tripp was a resident of California.

5.     Plaintiff 1840 Fairfax, LLC is a California limited liability company with its principal place of business in Orange County, California. Tripp is the managing member of 1840 Fairfax.

COMPLAINT

6. Defendant Justin Roberts is an individual who, on information and belief, resides at his primary residence in Miami Beach, Florida. Roberts is a real estate executive with extensive experience in real estate financing transactions, lending practices, and applicable law  -  including the laws of usury. Roberts acted at all times relevant herein in his individual capacity and as the managing member of each of the Florida LLC Defendants.

7. Defendant Prosper Fontanarosa Homes LLC is a Florida limited liability company organized and existing under the laws of the State of Florida, with its principal place of business in Florida. Roberts is the managing member.

8. Defendant Bayshore Blvd 3801 LLC is a Florida limited liability company organized and existing under the laws of the State of Florida. Roberts is the managing member.

9. Defendant Davis Island 577 Riviera LLC is a Florida limited liability company organized and existing under the laws of the State of Florida. Roberts is the managing member.

10. Defendant Sunset Park 3006 S Beach LLC is a Florida limited liability company organized and existing under the laws of the State of Florida. Roberts is the managing member.

11. Defendant Davis Island 501 E Davis Blvd LLC is a Florida limited liability company organized and existing under the laws of the State of Florida. Roberts is the managing member.

12. Defendant Davis Island 232 Channel Drive LLC is a Florida limited liability company organized and existing under the laws of the State of Florida. Roberts is the managing member.

13. The true names and capacities of DOES 1 through 10, whether individual, corporate, associate, or otherwise, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue these defendants by fictitious names. Plaintiffs will seek

COMPLAINT

leave to amend this Complaint to set forth the true names and capacities of DOE defendants when ascertained. Each of the DOE defendants is responsible in some manner for the acts and omissions alleged herein.

## JURISDICTION AND VENUE

14.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

15.     This Court independently has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because: (a) there is complete diversity of citizenship between Plaintiffs (California citizens) and Defendants (Florida citizens); and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs, as Plaintiffs' damages are no less than $680,000.00 as of April 13, 2026, and continue to accrue.

16.     This Court has personal jurisdiction over Roberts and the Florida LLC Defendants because: (a) Roberts personally reached into California to solicit and negotiate a bridge loan from California-based Plaintiffs; (b) the June 27, 2023 Promissory Note was accepted in California; (c) Roberts transmitted communications and directed loan proceeds to and from California; (d) the Promissory Note contains a choice-of-law and venue provision designating California as the governing jurisdiction; and (e) Defendants purposefully availed themselves of the privileges of conducting activities in California, giving rise to the claims asserted herein.

COMPLAINT

17.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in Orange County, California, including Plaintiffs' funding of the loan and Roberts' solicitation and negotiation activities directed at California. Venue is also proper pursuant to the Promissory Note's forum selection clause designating the courts of Orange County, California as the appropriate forum.

## GENERAL FACTUAL ALLEGATIONS

**A.     Roberts Solicits California Residents for Bridge Financing**

18.     In June 2023, Roberts, acting individually and as managing member of the Florida LLC Defendants, solicited Plaintiffs  -  California residents  -  seeking $200,000.00 in bridge financing to fund real estate transactions in Florida. Roberts represented that he required short-term financing due to his **inability to secure traditional financing** through conventional lending channels.  Roberts' claimed inability to secure traditional financing was false. On information and belief, at the time Roberts solicited Plaintiffs for bridge financing, Roberts and his affiliated entities had extremely significant amounts in active real estate developments under management as he currently represents on social media that he has approximately $2.8 billion under management. A developer operating at that scale—with access to institutional capital markets, private lenders, and commercial credit facilities commensurate with a multi-billion-dollar portfolio—would not require a $200,000.00 bridge loan from individual California residents due to an inability to secure conventional financing. Roberts' misrepresentation of his financing circumstances was a deliberate device to induce Plaintiffs to fund the loan on the terms Roberts proposed.

19.     To induce Plaintiffs to extend the loan, Roberts proposed  -  of his own initiative and volition  -  **a five percent (5%) monthly interest rate**, representing to Plaintiffs that such a rate was appropriate compensation for the risk Plaintiffs were undertaking in providing short-term bridge financing.

20.     Roberts is and was at all relevant times an experienced real estate executive with extensive knowledge of real estate financing, commercial lending, and applicable law. Roberts holds a degree in Economics from UC Santa Barbara and pursued an MBA at New York University's Stern School of Business, providing him with formal academic training in business transactions.  Roberts' combined business education and professional experience overseeing billions of dollars in active real estate developments made him well aware of California's usury laws, including applicable exemptions and limitations, at the time he proposed the 5% monthly interest rate. Roberts' legal sophistication distinguishes him from an unsophisticated borrower who might unknowingly propose an impermissible rate: Roberts knew, or was reckless in not knowing, that the rate he proposed would expose the Note to a usury challenge—a defense he subsequently deployed to evade repayment.

21.     Plaintiffs, relying on Roberts' representations, his claimed experience, and his proposal of the specific interest rate, agreed to provide the bridge financing. On **June 27, 2023**, Plaintiffs and Defendants executed a **written Promissory Note** (the "Note," a true and correct copy of which is attached hereto as **Exhibit A** and incorporated herein by reference)  for the principal sum of $200,000.00.

**B.     Key Terms of the June 27, 2023 Promissory Note**

22.     The Note expressly provides, among other terms:

    a.     **Principal**: $200,000.00;

    b.     **Interest Rate**: 5% per month, with the Note explicitly documenting that "Borrower suggested such rate to Lender as a

bridge loan due to inability to secure financing";

  c. **Maturity Date**: The entire principal and all accrued, unpaid interest were due and payable in full on or before October 27, 2023;

  d. **Default Penalty**: Upon default, a monthly penalty accrues at $15,000.00 per month (equivalent to $500.00 per day);

  e. **Attorneys' Fees**: The Note entitles the prevailing party to recover attorneys' fees, costs, and expenses;

  f. **Governing Law**: The Note is governed by, and to be construed and enforced in accordance with, the laws of the State of California;

  g. **Venue**: The Note designates Orange County, California as the proper forum for dispute resolution.

23. Plaintiffs performed all of their obligations under the Note. Plaintiffs timely funded the $200,000.00 loan to Defendants.

**C. <u>Defendants Default and Engage in Fraudulent Conduct</u>**

24. Defendants failed to repay the principal amount of $200,000.00 and the accrued interest by the **October 27, 2023 maturity date**, thereby defaulting on the Note.

25. Following the default, rather than honor their contractual obligations, Defendants - through Roberts - took the remarkable position that the 5% monthly interest rate that **Roberts himself had proposed** was allegedly "usurious" under California law and therefore unenforceable.

26. Roberts' later usury defense is consistent with, and further supports, Plaintiffs' fraud theories. Roberts is a sophisticated real estate professional with direct knowledge of commercial lending and financing terms. Plaintiffs are

COMPLAINT

informed and believe, and on that basis allege, that when Roberts proposed the 5% monthly rate he either knew, or was reckless in not knowing, the legal consequences of that proposal, and nevertheless used the proposed rate and promised repayment terms to induce Plaintiffs to fund the loan.

27. Since the October 27, 2023 default, Roberts and the Florida LLC Defendants have refused to repay the outstanding principal, contractual interest, and accrued default penalties. Roberts made a single nominal partial payment of $20,000.00 in June 2025 - a payment that itself constitutes an acknowledgment of the outstanding debt.

28. On information and belief, Roberts' conduct toward Plaintiffs did not occur in isolation. Publicly filed litigation in Hillsborough County, Florida reflects that, by December 2023, Roberts and a related Davis Island entity - Davis Island 232 Channel Investment LLC - were already defendants in a separate verified action arising from a defaulted $1,350,000.00 promissory note, guaranty, and mortgage loan involving the property located at 232 Channel Drive, Tampa, Florida.

29. That Florida action does not, on its face, resolve the merits of Plaintiffs' claims here and is not alleged as proof that the same misrepresentations were made to that lender. It is alleged, instead, because it demonstrates that Roberts and his affiliated entities were simultaneously involved in other substantial defaulted loan obligations during the same general period that Roberts was soliciting and failing to repay Plaintiffs.

30. The existence of that contemporaneous default litigation supports the inference that Roberts was operating through multiple affiliated special-purpose entities while under significant loan distress, and that Roberts' representations to Plaintiffs concerning short-term repayment ability, financing circumstances, and intent to honor the Note were knowingly false, recklessly made, or made without

COMPLAINT

reasonable basis. Those same facts further support Plaintiffs' fraud theories, alter-ego allegations, and civil RICO allegations by showing overlapping entities, overlapping financing activity, interstate conduct, and contemporaneous defaults involving Roberts and his controlled entities.

31.　　Plaintiffs are further informed and believe, and on that basis allege, that discovery is likely to reveal additional lender transactions involving Roberts and/or one or more Roberts-controlled entities that were structured in a substantially similar manner. Plaintiffs do not allege any unfiled claim as proof of liability here, but allege that discovery is likely to show a broader pattern of substantially similar lender-facing financing conduct involving Roberts, affiliated entities, and multiple lenders.

32.　　Roberts' post-default conduct further demonstrates a deliberate pattern of false promises used to induce Tripp to forbear from enforcing the Note. Following the October 27, 2023 maturity default, Roberts, in his own handwriting and over his own signature, presented Tripp with a written representation setting forth the terms of a separate real estate transaction — identified as the "1040 S Miami Ave Assignment" — through which Roberts represented he would generate proceeds sufficient to repay Tripp. The handwritten document reflected a structured timeline of expected cash flows to Roberts: $1,000,000.00 at an initial closing, $1,000,000.00 by February 15, $5,000,000.00 by May 1, and a $10,000,000.00 backend preference through a related entity. The document was presented to Tripp as evidence of Roberts' anticipated deal proceeds — the source from which Roberts represented he would repay his outstanding obligation. Roberts represented to Tripp that repayment of the outstanding Note obligation would come from the proceeds of this transaction. Plaintiffs cannot independently verify at this time whether the 1040 S Miami Ave transaction existed, was consummated, or generated the proceeds Roberts described. What is known — and is alleged — is

COMPLAINT

that Roberts made these representations in writing and over his signature, that Tripp relied on those representations in continuing to forbear from immediate legal action, and that Tripp was never paid. Whether or not the underlying transaction was real, Roberts' representation that it would result in payment to Tripp was false: no payment followed. This conduct is additional evidence of Roberts' fraudulent intent and willingness to manufacture representations of imminent repayment to delay enforcement — a pattern consistent with, and further supporting, Plaintiffs' claims for fraud, false promise, and civil RICO violations.

33. By June 2025, Tripp's concerns about the veracity of Roberts' representations had reached a breaking point. On or about June 16, 2025, Tripp directly and repeatedly asked Roberts in writing whether the purported $5,000,000.00 buyer transaction was real — including whether the buyer, the transaction, and the closing were genuine. Roberts' sole response was to propose "checking in on Wednesday" — a non-answer he offered without providing any substantiating documentation, identifying any counterparty or closing agent, or copying Tripp on any underlying correspondence as Tripp had repeatedly requested. Roberts also refused, without legitimate explanation, Tripp's multiple requests to be included in email communications relating to the purported closing. Roberts' inability or unwillingness to provide any independent verification of the transaction — combined with his unbroken pattern of manufactured deadlines, postponed closings, and unsubstantiated representations of imminent repayment stretching from October 2023 through June 2025 — further supports the inference that Roberts' representations were knowingly false when made and were designed to delay Tripp's enforcement of the Note.

34. Roberts' text message communications with Tripp during the spring and summer of 2024 further corroborate his pattern of false promises designed to induce forbearance. On or about April 11, 2024 — nearly six months after the

COMPLAINT

October 27, 2023 maturity default — Roberts texted Tripp that the property at 94 W. Davis Boulevard had "finished painting" and that the end unit would close around May 10, and promised Tripp: "I'll of course give you extra funds for this extended time." That same exchange reflects Tripp's response that he was "linking up" with his attorney and wanted to redo the promissory note "so we have something that's current" — a request Roberts effectively ignored. On or about May 12, 2024, Roberts again texted Tripp that the property was being listed for $2,525,000 against a loan balance of approximately $1,750,000, and expressly represented: "We'll get u paid back plus extra interest for time." These communications are significant for two reasons: first, they demonstrate that Roberts had substantial equity in the subject property at the time — yet still did not repay Plaintiffs; and second, they constitute additional written false promises of repayment made months after default, upon which Tripp continued to rely in forbearing from immediate legal action. Then, on or about May 30, 2024, when Tripp sent Roberts a proposed updated promissory note for execution, Roberts flatly refused to sign it, stating "I'm not signing that" and identifying his specific objection as "the default at payment" clause. Roberts' refusal to re-execute a note that would have confirmed his obligation to pay the default penalty — a penalty he had already triggered — is direct evidence of his intent to avoid the very obligations he had promised to honor. Taken together, these contemporaneous written communications demonstrate that Roberts was simultaneously making oral and written representations of imminent repayment to induce Tripp's forbearance while refusing to execute any written instrument that would hold him accountable for the consequences of his already-existing default.

/ /

/ /

/ /

COMPLAINT

**D.    Plaintiffs' Damages**

35.    As of April 13, 2026, Plaintiffs' damages total no less than $680,000.00, calculated as follows, subject to proof and to any enforceability determinations the Court may make regarding the Note's interest and default-penalty provisions:

| Component | Amount |
| --- | --- |
| Return of principal | $200,000.00 |
| Contractual interest (through October 27, 2023) | $40,000.00 |
| Monthly default penalty (October 27, 2023 – June 27, 2025) | $315,000.00 |
| Prorated penalty (June 27, 2025 – April 13, 2026) | $145,000.00 |
| Less: Partial payment (June 2025) | ($20,000.00) |
| Total as of April 13, 2026 | $680,000.00 |

36.    In addition to the foregoing, additional default penalties continue to accrue at $500.00 per day from April 13, 2026, through the date of judgment.

**E.    Roberts Used the Florida LLCs as Alter Egos and Instrumentalities of Fraud**

37.    On information and belief, Roberts used the Florida LLC Defendants as alter egos and instrumentalities of his fraudulent scheme. Roberts commingled funds among the LLCs and himself, exercised complete dominion and control over each entity, used the LLCs as vehicles to receive and divert loan proceeds, and failed to observe corporate formalities. Adherence to the fiction of separate corporate existence among Roberts and the Florida LLC Defendants would

sanction fraud and promote injustice.

38.   The Florida LLC Defendants are therefore the alter egos of Roberts, and Roberts is personally liable for all obligations and liabilities of the LLC Defendants. Alternatively, the LLCs are each jointly and severally liable for the conduct of Roberts acting as managing member.

39.   On information and belief, the same pattern of using Davis Island and other project-specific entities in connection with multiple defaulted financing transactions was intended to compartmentalize assets, obscure financial condition, and hinder creditors' ability to trace funds and enforce obligations against Roberts and his controlled entities. The Stormfield litigation and the anticipated Gio Cruz action further support the inference that Roberts used multiple overlapping entities as part of a recurring lender-facing financing scheme rather than isolated, unrelated transactions.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Breach of Contract  -  June 27, 2023 Promissory Note

### (Against All Defendants and DOES 1–10)

40.   Plaintiffs incorporate by reference each and every allegation in paragraphs 1 through 39 as though fully set forth herein.

41.   On June 27, 2023, Plaintiffs and Defendants entered into a valid, written, and enforceable contract  -  the Promissory Note  -  for the principal sum of $200,000.00.

42.   The Note constitutes a valid and binding contract supported by adequate consideration: Plaintiffs extended $200,000.00 in loan proceeds in exchange for Defendants' promise to repay the principal plus 5% monthly interest by October 27, 2023, together with applicable default penalties in the event of non-

COMPLAINT

payment.

43. Plaintiffs fully performed their obligations under the Note by timely funding the $200,000.00 loan to Defendants.

44. Defendants materially breached the Note by failing to repay the principal, accrued interest, and applicable default penalties on or before October 27, 2023, and by failing to remit the full outstanding balance at any time thereafter.

45. Roberts' claim that the interest rate is unenforceable due to usury does not excuse Defendants' obligation to repay the principal. Even assuming - which Plaintiffs do not concede - that the interest rate or any default-charge provision is subject to usury or enforceability limitations, Defendants remain obligated to repay the $200,000.00 principal and any lawful interest and charges recoverable under applicable law.

46. As a direct and proximate result of Defendants' breach, Plaintiffs have been damaged in an amount no less than $680,000.00 as of April 13, 2026, plus additional daily penalties of $500.00 per day thereafter to the extent recoverable, pre-judgment interest at the maximum legal rate, attorneys' fees and costs as provided in the Note, and such other and further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION

### Fraud - Intentional Misrepresentation

### (Against All Defendants and DOES 1–10)

47. Plaintiffs incorporate by reference each and every allegation in paragraphs 1 through 46 as though fully set forth herein.

48. Roberts, acting individually and as managing member of the Florida LLC Defendants, made the following material misrepresentations of fact to Plaintiffs:

- 14 -
COMPLAINT

a.     That Roberts required bridge financing due to his inability to secure traditional financing;

b.     That Roberts proposed a 5% monthly interest rate as appropriate, legal, and fair compensation for the bridge loan;

c.     That Roberts and the LLC Defendants intended to honor all terms and conditions of the Promissory Note, including full repayment of the principal, the proposed interest, and any applicable default penalties;

d.     That the loan proceeds would be used for identified real estate transactions.

49.     Each of these representations was false when made. Roberts, a sophisticated real estate professional with knowledge of California lending and usury law, knew at the time he proposed the 5% monthly interest rate that his subsequent usury defense would negate the interest obligation. Roberts had no intention of honoring the full terms of the Note when it was executed.

50.     Roberts made these misrepresentations intentionally, with the design and purpose of inducing Plaintiffs to fund the $200,000.00 loan.

51.     Plaintiffs reasonably and justifiably relied on Roberts' representations. Plaintiffs had no reason to believe that Roberts  -  an experienced real estate professional who himself proposed the loan terms  -  was making deliberate misrepresentations to induce the loan.

52.     As a direct and proximate result of Defendants' intentional misrepresentations, Plaintiffs have suffered damages in an amount to be proven at trial, including no less than $680,000.00 as of April 13, 2026, plus continuing accruals to the extent recoverable, pre-judgment interest, and all other relief requested herein.

53.     Defendants acted with oppression, fraud, and malice within the meaning of California Civil Code § 3294. Plaintiffs are accordingly entitled to an

COMPLAINT

award of punitive damages in an amount sufficient to punish Defendants and deter similar fraudulent conduct.

### THIRD CAUSE OF ACTION

#### Fraud  -  Negligent Misrepresentation

#### (Against All Defendants and DOES 1–10)

54.    Plaintiffs incorporate by reference each and every allegation in paragraphs 1 through 53 as though fully set forth herein.

55.    In the alternative to the Second Cause of Action, even if Roberts honestly believed certain representations to be true when made, he had no reasonable grounds for such belief given: (a) his extensive experience as a real estate executive; (b) his sophistication with real estate financing and commercial lending; (c) his awareness of California usury law at the time he proposed the interest rate; and (d) his involvement in other substantial defaulted loan obligations through affiliated entities during the same general period.

56.    Roberts' representations concerning present or existing facts - including his claimed financing circumstances, the propriety of the proposed rate, and the basis on which Plaintiffs were being asked to extend bridge financing - were made without a reasonable basis in fact.

57.    Roberts intended, or reasonably should have expected, that Plaintiffs would rely on these representations in extending the bridge financing.

58.    Plaintiffs reasonably and justifiably relied upon these representations to their detriment.

59.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiffs suffered damages in an amount to be proven at trial, including no less than $680,000.00 as of April 13, 2026, plus continuing accruals to the extent recoverable, pre-judgment interest, and all other relief requested herein.

COMPLAINT

## FOURTH CAUSE OF ACTION

### Fraud  -  False Promise

### (Against All Defendants and DOES 1–10)

60.     Plaintiffs incorporate by reference each and every allegation in paragraphs 1 through 59 as though fully set forth herein.

61.     In connection with obtaining the bridge loan from Plaintiffs, Roberts made promises  -  individually and on behalf of the Florida LLC Defendants  -  to repay the loan proceeds in full, to honor the 5% monthly interest rate that he proposed, and to pay all applicable default penalties upon non-payment.

62.     At the time Roberts made these promises, Roberts had no intention of performing them. Roberts' intent not to perform is evidenced by: (a) his failure to repay the loan by the maturity date; (b) his post-default claim that the interest rate he himself proposed was usurious  -  a defense he would have been aware of before he proposed the rate; and (c) his single nominal partial payment of $20,000.00 in June 2025, more than 20 months after default, made without remitting the full outstanding balance.

63.     Defendants made these false promises with the intent to induce Plaintiffs to extend the bridge financing.

64.     Plaintiffs reasonably and justifiably relied on these promises in funding the $200,000.00 loan.

65.     As a direct and proximate result of Defendants' false promises, Plaintiffs suffered damages in an amount to be proven at trial, including no less than $680,000.00 as of April 13, 2026, plus continuing accruals to the extent recoverable, pre-judgment interest, and all other relief requested herein.

66.     Defendants acted with oppression, fraud, and malice within the meaning of California Civil Code § 3294, entitling Plaintiffs to an award of punitive damages.

COMPLAINT

## FIFTH CAUSE OF ACTION

### Civil RICO  -  18 U.S.C. § 1962(c)

### (Against Roberts and DOES 1–10)

67.    Plaintiffs incorporate by reference each and every allegation in paragraphs 1 through 66 as though fully set forth herein.

68.    **The Enterprise**. The Florida LLC Defendants  -  Prosper Fontanarosa Homes LLC, Bayshore Blvd 3801 LLC, Davis Island 577 Riviera LLC, Sunset Park 3006 S Beach LLC, Davis Island 501 E Davis Blvd LLC, and Davis Island 232 Channel Drive LLC  -  together with Roberts and the DOE Defendants, constitute an "enterprise" as defined by 18 U.S.C. § 1961(4): an association-in-fact of individuals and entities organized for the purpose of soliciting bridge financing from lenders under false pretenses, receiving and holding the loan proceeds through project-specific entities, diverting or insulating those proceeds for the benefit of Roberts and his controlled entities, and using manufactured legal defenses to evade repayment obligations. Roberts functioned as the enterprise's central decision-maker; the LLC Defendants functioned as project-specific instrumentalities through which the enterprise received, held, and compartmentalized assets and liabilities.

69.    **Interstate Commerce**. The enterprise was engaged in, and its activities affected, interstate commerce. Roberts and the LLCs solicited loan proceeds from California-based lenders, directed those proceeds across state lines into Florida, conducted real estate transactions in Florida, and communicated with Plaintiffs via interstate wire communications.

70.    **Roberts' Role**. Roberts conducted and participated in the conduct of the enterprise's affairs through a pattern of racketeering activity, including by: (a) making materially false representations to Plaintiffs in California via interstate wire communications to induce the bridge loan; (b) directing misappropriation of the loan proceeds; and (c) directing the enterprise's post-default fraudulent

COMPLAINT

communications to avoid repayment.

71.    **Pattern of Racketeering Activity**  -  Wire Fraud (18 U.S.C. § 1343). Roberts and the enterprise committed multiple predicate acts of wire fraud by transmitting materially false representations and fraudulent communications via interstate wire  -  including telephone calls, emails, and electronic fund transfers  - in furtherance of the scheme to defraud Plaintiffs. Each fraudulent wire communication constitutes a separate predicate act under 18 U.S.C. § 1961(1). These predicate acts include, without limitation, the following interstate wires:

a.    In or about June 2023, Roberts placed one or more interstate telephone calls and/or sent one or more interstate emails from Florida to Plaintiffs in California soliciting the $200,000 bridge loan, representing that he needed short-term financing, that the proposed 5% monthly rate was an appropriate and acceptable bridge-loan term, and that he and the borrower entities intended to repay according to the Note;

b.    On or about June 27, 2023, Roberts caused the Promissory Note and related execution communications to be transmitted by interstate email or other electronic means between Florida and California in furtherance of obtaining the loan proceeds;

c.    On or about June 27, 2023, Roberts caused or directed the interstate electronic transfer of the $200,000.00 loan proceeds from California to Florida and/or to one or more Roberts-controlled borrower entities;

d.    After the October 27, 2023 maturity default, Roberts made one or more interstate telephone calls, emails, and/or other electronic communications to Plaintiffs in California asserting that the rate he had proposed was allegedly usurious and unenforceable, while using that position to delay, avoid, or reduce repayment obligations that he

previously represented would be honored.

72.    **Pattern**. The predicate acts are related to one another because they share the same participants (Roberts and the LLC entities), the same method of commission (fraudulent inducement and follow-on avoidance communications via interstate wire), the same victim set, and the same purpose (obtaining money from lenders under false pretenses and evading repayment). The pattern constitutes, at minimum, a closed-ended pattern of racketeering activity. Plaintiffs further allege on information and belief that discovery is likely to reveal additional substantially similar lender-facing transactions involving Roberts and Roberts-controlled entities.

73.    As a direct and proximate result of Roberts' and the enterprise's RICO violations, Plaintiffs have been injured in their business and property in an amount no less than $680,000.00 as of April 13, 2026. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs seek treble damages, costs, and reasonable attorneys' fees, without duplicative recovery.

74.    The predicate acts of wire fraud described herein were not isolated or accidental. They were committed as part of a deliberate scheme designed and directed by Roberts to obtain money from lenders under false pretenses and to thereafter evade repayment through manufactured legal defenses. Each predicate act was undertaken in furtherance of that scheme and was related to every other predicate act by common participants, common methods, common victims, and a common fraudulent purpose.

75.    The enterprise's pattern of racketeering activity constitutes, at minimum, a closed-ended pattern spanning from at least June 2023 through the present, during which Roberts and his controlled entities engaged in repeated acts of wire fraud directed at Plaintiffs. Plaintiffs further allege on information and belief that discovery will reveal additional substantially similar lender-facing

COMPLAINT

transactions by Roberts and Roberts-controlled entities, extending and reinforcing the pattern of racketeering activity alleged herein.

76.    Roberts conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering activity described herein, within the meaning of 18 U.S.C. § 1962(c). Roberts was not a mere employee or agent acting at the direction of others; he was the central decision-maker, the directing mind, and the primary beneficiary of the fraudulent scheme.

77.    Plaintiffs were injured in their business and property by reason of Roberts' violation of 18 U.S.C. § 1962(c). The injuries Plaintiffs suffered—the loss of $200,000.00 in loan principal, together with contractual interest, default penalties, and associated costs—were directly and proximately caused by the pattern of racketeering activity described herein. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to treble their actual damages, together with costs of suit and reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION

### Civil RICO Conspiracy  -  18 U.S.C. § 1962(d)

### (Against All Defendants and DOES 1–10)

78.    Plaintiffs incorporate by reference each and every allegation in paragraphs 1 through 77 as though fully set forth herein.

79.    Roberts and the Florida LLC Defendants conspired to violate 18 U.S.C. § 1962(c) by agreeing to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as described above.

80.    Each Defendant knowingly agreed to the overall objective of the scheme and took actions in furtherance thereof, including Roberts' execution of the Promissory Note, the LLCs' receipt of loan proceeds, and the collective refusal to repay amounts due.

81.    As a direct and proximate result of the RICO conspiracy, Plaintiffs have been injured in an amount no less than $680,000.00 as of April 13, 2026 and seek treble damages, costs, and attorneys' fees under 18 U.S.C. § 1964(c), without duplicative recovery.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment / Restitution

### (Against All Defendants and DOES 1–10)

82.    Plaintiffs incorporate by reference each and every allegation in paragraphs 1 through 81 as though fully set forth herein.

83.    In the alternative, to the extent any Defendant contends the Promissory Note or any provision thereof is unenforceable, Defendants were unjustly enriched by receiving and retaining the $200,000.00 in loan proceeds provided by Plaintiffs under circumstances where equity and good conscience require restitution.

84.    Plaintiffs conferred a benefit on Defendants in the form of $200,000.00 in cash. Defendants received and appreciated this benefit. It would be inequitable for Defendants to retain the loan proceeds  -  or any other benefit received  -  without repayment to Plaintiffs.

85.    Plaintiffs are entitled to restitution in the amount of $200,000.00, plus all benefits conferred upon Defendants as a result of Defendants' use of the loan proceeds, and pre-judgment interest thereon at the legal rate.

/ /

/ /

/ /

/ /

/ /

/ /

COMPLAINT

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Jordan Tripp and 1840 Fairfax, LLC pray for judgment against all Defendants, jointly and severally, as follows:

**On the First Cause of Action (Breach of Contract):**

1. For compensatory damages in an amount no less than $680,000.00 as of April 13, 2026, plus $500.00 per day from April 13, 2026 through the date of judgment, to the extent recoverable;

2. For pre-judgment and post-judgment interest at the maximum lawful rate;

3. For attorneys' fees and costs pursuant to the Promissory Note's fee-shifting provision;

**On the Second Cause of Action (Intentional Misrepresentation):**

4. For compensatory damages in an amount according to proof, including no less than $680,000.00 as of April 13, 2026;

5. For pre-judgment and post-judgment interest at the maximum lawful rate;

6. For punitive and exemplary damages pursuant to California Civil Code § 3294;

**On the Third Cause of Action (Negligent Misrepresentation):**

7. For compensatory damages in an amount according to proof, including no less than $680,000.00 as of April 13, 2026;

8. For pre-judgment and post-judgment interest at the maximum lawful rate;

**On the Fourth Cause of Action (False Promise):**

9. For compensatory damages in an amount according to proof,

COMPLAINT

including no less than $680,000.00 as of April 13, 2026;

10.   For pre-judgment and post-judgment interest at the maximum lawful rate;

11.   For punitive and exemplary damages pursuant to California Civil Code § 3294;

**On the Fifth Cause of Action (Civil RICO  -  18 U.S.C. § 1962(c)):**

12.   For treble damages pursuant to 18 U.S.C. § 1964(c), without duplicative recovery;

13.   For reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c);

**On the Sixth Cause of Action (Civil RICO Conspiracy  -  18 U.S.C. § 1962(d)):**

14.   For treble damages pursuant to 18 U.S.C. § 1964(c), without duplicative recovery;

15.   For reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c);

**On the Seventh Cause of Action (Unjust Enrichment):**

16.   For restitution in the amount of $200,000.00, plus all benefits conferred upon Defendants as a result of their use of the loan proceeds, and pre-judgment interest thereon;

**On All Causes of Action:**

17.   For a trial by jury on all claims so triable;

18.   For costs of suit incurred herein;

19.   For such other and further relief as the Court deems just and proper.

//

//

COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiffs Jordan Tripp and 1840 Fairfax, LLC hereby demand a trial by jury on all issues and claims so triable pursuant to Federal Rule of Civil Procedure 38(b).

DATED:  April 15, 2026     GARCIA RAINEY BLANK & BOWERBANK LLP

By:         */s/ Jeffrey M. Blank*
_____
JEFFREY M. BLANK
NORMA V. GARCIA
Attorney for Plaintiffs,
JORDAN TRIPP and
1840 FAIRFAX, LLC

COMPLAINT

# Exhibit A

## PROMISSORY NOTE

**Principal Sum:** $200,000.00   **Start Date:** June 27th, 2023   **Due Date:** October 27, 2023

**Lender Name:** Jordan Tripp, 1840 Fairfax, LLC **Lender Address:** 7782 Willow Lane, La Palma, CA

**Borrower Name:** Prosper Fontanarosa Homes LLC, Bayshore Blvd 3801 LLC, Davis Island 577 Riviera LLC, Sunset Park 3006 S Beach LLC, Davis Island 501 E Davis Blvd LLC, Davis Island 232 Channel Drive LLC, and Justin Roberts

**Borrower Address:** 2301 Collins Avenue, #540, Miami Beach, FL 33139

**FOR VALUE RECEIVED**, **PROSPER FONTANAROSA HOMES LLC,** a Florida Limited Liability Company, **BAYSHORE BLVD 3801 LLC,** a Florida Limited Liability Company, **DAVIS ISLAND 577 RIVIERA LLC**, a Florida Limited Liability Company, **SUNSET PARK 3006 S BEACH LLC,** a Florida Limited Liability Company, **DAVIS ISLAND 501 E DAVIS BLVD LLC,** a Florida Limited Liability Company, **DAVIS ISLAND 232 CHANNEL DRIVE LLC,** a Florida Limited Liability Company, and **JUSTIN ROBERTS**, individually (hereinafter collectively referred to as "the Borrower"), promises to pay to the order of the **JORDAN TRIPP** and **1840 FAIRFAX, LLC,** a California Limited Liability Company (hereinafter sometimes called "Lender"), or its assigns, by electronic transfer, or at such other place as the holder or holders hereof may from time to time designate in writing, in lawful money of the United States of America, the principal sum of Two-Hundred Thousand Dollars (hereinafter called "Principal Balance"), together with interest on the Principal Balance outstanding from time to time from and after the date of this Promissory Note until paid in full, at the rate hereinafter specified.

**PAYMENTS.** Borrower will pay to Lender the principal sum of $200,000, with accrued interest of 5.00% per month, paid at maturity. For the avoidance of doubt the total due at Maturity is $200,000, plus $10,000 of accrued interest per month. Borrower suggested such rate to Lender as a bridge loan due to inability to secure financing. Any late charges or returned payment charges, as well as all other amounts and fees that may become due under terms of this Note, are additional payments.

 **- Terms.** This Note will be repaid in full on October 27, 2023 ("Due Date") or the sale of 94 W. Davis Boulevard, Tampa, FL, 33606, whichever sooner, including accrued interest and any other applicable charges and fees. If not, default has occurred, and interest shall accrue at $15,000 (Fifteen Thousand Dollars) until all amounts due under the terms of this Note are received.

 **- Delivery.** Payments shall be wired or electronically delivered directly to Lender Bank.

 **- Prepayments.** The Borrower shall have the right to prepay this Promissory Note, in whole or in part, prior to the Due Date without incurring any penalty.

DocuSign Envelope ID: ZE5B6910-0991-49CD-80B0-83C0A46E80B7

If the Borrower prepays the Note in full prior to the Due Date, the Borrower agrees to still pay the total interest amount owed through Due Date ($40,000).

**COLLECTION COSTS.** If any payment obligation under this Note is late, the Borrower promises to pay all costs of collection, including attorney's fees and costs.

**EVENTS OF DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

(a)   **Payment Default.** Borrower fails to make any payment when due, including the payment in full due on the Maturity Date.

(b)   **Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant, or condition contained in this Note or to comply with or to perform any term, obligation, covenant, or condition contained in any other agreement between Lender and Borrower.

If an Event of Default occurs, Lender shall be permitted to pursue all rights and remedies allowed by this Note or available at law included and not limited to the foreclosure of properties.

**LENDER'S RIGHTS.** Upon default, and if not cured by Borrower, Lender may declare the entire unpaid principal balance on this Note, and other amounts due hereunder, and all accrued unpaid interest immediately due and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction) and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by, construed, and enforced in accordance with the laws of the State of California. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, California.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate or otherwise change one or more times the time for

payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue or deal with any one or more of Borrower's sureties, endorsers or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees, or endorses this Note, to the extent allowed by law, waive presentment, demand for payment and notice of dishonor. Upon any change in the terms of this Note and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; impair, fail to realize upon or perfect Lender's security interest in the collateral; and/or take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

BORROWER:

**PROSPER FONTANAROSA HOMES LLC, a Florida Limited Liability Company:**

6/27/2023

By: _____

6A45D2691B084DF...

Justin Roberts, Managing Member                                    (Date)

**BAYSHORE BLVD 3801 LLC, a Florida Limited Liability Company:**

6/27/2023

By: _____

6A45D2691B084DF...

Justin Roberts, Managing Member                                    (Date)

**DAVIS ISLAND 577 RIVIERA LLC, a Florida Limited Liability Company:**

6/27/2023

By: _____

6A45D2691B084DF...

Justin Roberts, Managing Member                                    (Date)

**SUNSET PARK 3006 S BEACH,** a Florida Limited Liability Company:

By: _____      6/27/2023
     6A45D2691B084DF...                                _____

Justin Roberts, Managing Member                         (Date)


**DAVIS ISLAND 501 E DAVIS BLVD LLC,** a Florida Limited Liability Company:

By: _____      6/27/2023
     6A45D2691B084DF...                                _____

Justin Roberts, Managing Member                         (Date)


**DAVIS ISLAND 232 CHANNEL DRIVE LLC,** a Florida Limited Liability Company:

By: _____      6/27/2023
     6A45D2691B084DF...                                _____

Justin Roberts, Managing Member                         (Date)


**Justin Roberts, Individually**

By: _____      6/27/2023
     6A45D2691B084DF...                                _____

Justin Roberts, Individually                                 (Date)


LENDER:

**1840 Fairfax LLC,** a California Limited Liability Company

By: _____      6/27/2023
     9BD098B4059C43D...                                _____

Jordan Tripp, Managing Member                         (Date)

**Jordan Tripp, Individually**

By: _____      6/27/2023
     9BD098B4059C43D...                                _____

Jordan Tripp, Individually                                 (Date)